**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DAVID MOORAD, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:11-CV-2580-RWS
AFFORDABLE INTERIOR :
SYSTEMS, LLC., *et al.*, :
:
    Defendants. :
:

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [13], Plaintiff's Motion for Preliminary Injunction [4], and Plaintiff's Emergency Motion for Preliminary Injunction [11]. After a review of the record, the Court enters the following order.

## **I. Brief Factual Summary**[1]

Plaintiff David Moorad was formerly employed by Defendant Affordable Interior Systems ("AIS") and served as Vice President of Sales - GSA (Government Services Administration) from 2004 until he left the company in

---

[1]These facts are drawn from the Complaint unless otherwise indicated.

AO 72A
(Rev.8/82)

May 2011. On December 21, 2007, the Defendants required Plaintiff to sign an Amended and Restated Class P Unit Certificate and implied that if he did not sign it, he would be terminated. This certificate included two restrictive covenants that are issue in this suit, a covenant not to compete and a non-solicitation agreement.

> Section 5(a)(ii) of the Unit Certificate provides:
>
> During the Restricted Period, the Participant will not directly or indirectly, and will not assist directly or indirectly any other Person to . . . (B) solicit, induce, influence or encourage any customer of the Company or any of its Subsidiaries or independent contractor providing services to the Company or any of its Subsidiaries to terminate or diminish its relationship with them or (C) seek to persuade any customer (or any Person who was a customer of the Company or its Subsidiaries within twelve (12) months of the date of such solicitation or encouragement commences or occurs, as the case may be) or prospective customer of the Company or any of its Subsidiaries to conduct with anyone else, or otherwise call on, solicit or service any such customer or prospective customer with respect to, any business or activity that such customer or prospective customer conducts or could conduct with the Company or any of its Subsidiaries.

And Section 5(a)(i) of the Unit Certificate provides:

> For the period beginning on the Closing Date and ending twenty-four (24) months immediately following termination of the Participant's employment for any reason with the Company and its Subsidiaries (the "Restricted Period"), the Participant will not, directly or indirectly, on behalf of any individual or entity other than the Company and its Affiliates, perform services in any

2

capacity (whether as an owner, employee, partner, independent contractor or otherwise, whether with or without compensation) in the business of office furniture manufacturing and office furniture sales (the "Business") as of the date of such termination (the "Restricted Activities") in the Unites States (the "Restricted Territory"); provided, however, that ownership of less than 5% of the outstanding stock of any publicly traded company shall not by itself be deemed to be a violation of this provision.

In 2010 and 2011, the Defendants began to take away significant responsibilities and territories from the Plaintiff to "send the message" that Plaintiff was no longer valued at AIS. As a result, Plaintiff was constructively discharged and Plaintiff terminated his employment on May 18, 2011. Five days later, on May 23, 2011, Moorad was hired by Teknion as a Regional Sales Manager - GSA where he now makes more than $75,000 per year.

On June 16, 2011, Defendants sent a demand letter to Teknion, seeking to enforce the restrictive covenants. As a result, Plaintiff filed this declaratory judgment action to adjudge and declare that the restrictive covenants are void under Georgia law. The Defendants have now moved to dismiss, citing lack of subject matter jurisdiction, and the Plaintiff seeks a preliminary injunction. The Court will consider each motion in turn.

## II. Motion to Dismiss

Defendants move to dismiss this action for lack of subject matter

3

jurisdiction. 28 U.S.C. § 1332 grants district courts original jurisdiction when the amount in controversy exceeds $75,000 and the parties are citizens of different States. Defendant does not challenge the parties' alleged citizenship; rather, the question is whether Plaintiff has adequately plead the amount in controversy.

> When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective . . . . In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.

Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000). A federal court cannot find that it has subject matter jurisdiction if the benefit a plaintiff could receive is "too speculative and immeasurable to satisfy the amount in controversy requirement." Leonard v. Enterprise Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002).

In his complaint, Plaintiff plead that "[t]he monetary value of this dispute from Moorad's perspective is in excess of $75,000, as the enforcement or threatened enforcement of the invalid restrictive covenants at issue threatens to result in the preclusion and loss of Moorad's employment with his current employer Teknion Corporation, in which Moorad earns in excess of $75,000

4

per year." Cmpl., Dkt. No. [1] at ¶ 15. However, Defendant argues that the "ongoing dialogue between the parties reflect that AIS in fact has not sought to prohibit Plaintiff's employment with Teknion, but rather has focused on enforcing the restrictive covenants in the parties' underlying agreement in a manner that would only limit Plaintiff from doing business with certain (but not all) customers that he was involved with on behalf of AIS." Def. MTD, Dkt. No. [13-1] at 2. Plaintiff argues that Defendant's argument is simply untrue.

First, Plaintiff points to the non-competition agreement itself which would prohibit Moorad for two years from "directly or indirectly, on behalf of any individual or entity other than [AIS] and its Affiliates, perform[ing] services in any capacity . . . in the business of office furniture manufacturing and office furniture sales." Cmpl., Dkt. No. [1] at ¶ 33. Thus, if the non-compete is enforceable, Plaintiff would facially be unable to continue his employment with Teknion. Second, in their pre-suit demand letter to Teknion, Defendants stated:

> Given the nature of Teknion's business, AIS cannot reasonably conceive how Mr. Moorad's employment with Teknion would be consistent with certain non-competition . . . obligations that Mr. Moorad has to AIS.
>
> . . .

5

> AIS takes Mr. Moorad's obligations to AIS seriously and will demand <u>full compliance</u> with them. Accordingly–while reserving all rights–AIS demands that Mr. Moorad's employment be <u>suspended</u> until no sooner than the second anniversary of the termination of his employment with AIS or that a satisfactory explanation be provided of how his employment with [Teknion] could possibly be consistent with his obligations.
>
> . . .
>
> Beyond the fact that Mr. Moorad's employment with Teknion itself violates his obligations, . . .

Ex. E to Def.'s MTD, Dkt. No. [13-3] at 48-50 (emphasis added); see also Ex. 1 to Bello Aff., Dkt. No. [13-4] at 7-9 (making identical demands to Plaintiff directly). Therefore, Defendants insisted on enforcing the non-compete prior to this suit.

Finally, Plaintiff notes that in the parallel litigation in Massachusetts, Defendants' initial complaint stated that "AIS is entitled to an injunction prohibiting Moorad from continuing employment with Teknion and from soliciting business from any customer of AIS to conduct business with Teknion." Mass. Cmpl., Dkt. No. [13-2] at ¶ 45. Defendants, in their reply, state that they have amended their Massachusetts complaint and have removed their request that the Massachusetts court enjoin Plaintiff from working for Teknion.

Def.'s Reply, Dkt. No. [19] at 2. As well, they imply that they no longer wish to enforce the non-compete. However,

> It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." Mollan v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing-whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.

Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004) (footnote omitted).

At the time of the suit, Defendants were very clearly attempting to enforce the non-compete agreement. Defendants' post-suit determination that they no longer wish to pursue the non-compete agreement for what appears to be strategic reasons to skirt the amount-in-controversy requirement is unavailing and ultimately irrelevant. And whether or not Defendants are seeking to enforce the provision, Plaintiff is still a party to this non-compete which, if enforced, would cost him more than $75,000. Because Defendants were pursuing enforcement of the non-compete at the time of suit, the Court

7

will consider the benefit to the Plaintiff of the non-compete's invalidation in its decision.

Regarding proving the actual amount in controversy, Defendant argues that this Court's decision in Crump Insurance Services Inc. v. All Risks Ltd., 1:10-cv-1555, 2011 WL 176892 (N.D. Ga. January 18, 2011), controls and stands for the proposition that "solely referring to the amount of an employee's salary in support of the conclusory statement that the amount in controversy exceeds $75,000 is insufficient to establish the monetary value of the benefit the party would receive from the grant or denial of declaratory relief." Def.'s MTD, Dkt. No. [13-1] at 13. However, that summary misunderstands Crump's holding. In Crump, the defendant sought removal of a declaratory-judgment action which sought to declare that a non-solicitation agreement between the parties was invalid. To support their claim that the controversy exceeded $75,000, as the plaintiff did not make a specific demand in his complaint, defendant stated that plaintiff's former compensation with the defendant was in excess of $1,000,000.00. Thus, defendant argued, the amount in controversy would exceed $75,000. The Court ruled that plaintiff's prior salary was irrelevant in determining the benefit which would flow to the

8

plaintiff if the non-solicitation agreement was invalidated as it was wholly speculative what future economic value the plaintiff would derive from the ability to solicit prior customers.

Here, Plaintiff has alleged the value of the injunction–the ability to keep his salary with his new company, Teknion. Defendants are right that if Plaintiff had attempted to base his amount in controversy requirement on his prior salary with AIS, diversity would not be established. But, here, this Court has concrete evidence of the value of the injunction; Plaintiff would be able to continue to work for Teknion at a salary which exceeds $75,000. Thus, the Court finds subject matter jurisdiction is proper, and Defendant's Motion to Dismiss is **DENIED**.[2]

## III. Motion for Preliminary Injunction

Plaintiff next moves for a preliminary injunction to enjoin Defendants from enforcing the non-solicitation and non-compete agreements in Georgia. It is settled law in this Circuit that a preliminary injunction is an "extraordinary and drastic remedy[.]" Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). To obtain such relief, a movant must demonstrate:

---

[2]Because the Court finds that original jurisdiction exists via diversity, the Court will not address whether it would retain jurisdiction under the Declaratory Judgment Act.

9

> (1) a substantial likelihood of success on the merits of
> the underlying case, (2) the movant will suffer
> irreparable harm in the absence of an injunction, (3)
> the harm suffered by the movant in the absence of an
> injunction would exceed the harm suffered by the
> opposing party if the injunction issued, and (4) an
> injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002). Defendants have not opposed the Plaintiff's arguments that he has proven a substantial likelihood of success on the merits, the balance of hardships, or that the public interest would not be disserved. See LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). Rather, Defendants argue that Plaintiff cannot show irreparable harm.

> Plaintiff asserts that, should an injunction not issue, Plaintiff will suffer
>
> . . . the loss of his employment and livelihood, the inability to find
> other employment within his long-term career and expertise,
> substantial damage to his professional reputation, the loss of good
> will with his customers and industry contacts, and the burden of
> having to litigate the duplicitous and vexatious action filed by
> Defendants in Massachusetts.

Pl.'s Br., Dkt. No. [11-1] at 21. Defendants argue that there is no evidence that Plaintiff will lose his employment because they have removed that request from the Massachusetts action, and they affirm to the Court that they will not require

AO 72A
(Rev.8/82)

Plaintiff to leave Teknion. Defendants also argue that Plaintiff has a legal remedy–damages. However, the Eleventh Circuit has stated that in the restrictive covenant context, irreparable harm:

> cannot be undone through monetary remedies, [and exists] in the form of unenforceable restrictions on his access to customers, employees, and information. These injuries are in the form of lost opportunities, which are difficult, if not impossible, to quantify. Georgia public policy is clear that restrictive covenants in employment contracts are disfavored as potential restraints of trade which tend to lessen competition. Because of this public policy, the Georgia courts and this court have not hesitated to find irreparable harm in cases involving covenants not to compete.

MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1242 (11th Cir. 2005).

Based on this language, the Court finds that Plaintiff has established irreparable harm. First, while Defendants say that they will no longer prevent Plaintiff from working for Teknion, they say nothing about their opposition to the non-solicitation agreement. As that agreement would restrain trade, and was disfavored at the time it was signed, Plaintiff certainly would suffer irreparable harm if he were not granted an injunction on that matter. But additionally, Plaintiff is entitled to an injunction on the covenant not to compete. It does not matter that the Defendants have stated that they will not seek to enforce the covenant not to compete. That agreement still exists and facially restrains trade.

11

Plaintiff is allowed to seek a declaration to void such a provision and an injunction to make clear that Defendant cannot enforce it. In fact, without some binding agreement to that effect, Plaintiff will essentially sit in limbo, awaiting the Defendants' decision to change their mind. And, as the Eleventh Circuit has recognized, because covenants not to compete affect opportunities which are difficult to quantify, courts routinely hold that irreparable harm exists. Therefore the Court will **ENJOIN** the Defendants from enforcing the restrictive covenants in the State of Georgia.

**IV. Conclusion**

Defendants' Motion to Dismiss [13] is **DENIED** and Plaintiff's Emergency Motion for Preliminary Injunction [11] is **GRANTED.** The Defendants are **ENJOINED** from enforcing the restrictive covenants in the State of Georgia. As a result of the foregoing, Plaintiff's Motion for Preliminary Injunction [4] is **MOOT**.

**SO ORDERED**, this  18th  day of January, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)